# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| A.P.*, a minor,* | : | No. 4:16-CV-1153 |
| P.T.*, as parent and guardian of A.P.*, | : | |
| | : | |
| Plaintiffs, | : | (Judge Brann) |
| | : | |
| v. | : | |
| | : | |
| SHAMOKIN AREA | : | |
| SCHOOL DISTRICT, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### OCTOBER 5, 2017

Proportionality.  This adjective, defined as: 'of two quantities having the same or a constant ratio or relation,' has been liberated from use by mere statisticians by assimilation into the recent amendments to the discovery rules of the Federal Rules of Civil Procedure.  This mathematical concept applies across the law, even when the term itself has not been used.  In the seminal case on 'relational' attorney's fees, *Hensley v. Eckerhart*, Justice Lewis F. Powell, Jr. explained that,

> Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.[1]

---

[1]    461 U.S. 424, 436 (1983).

The fact that this concept of proportionality has been used throughout the law underscores the law's understanding of balance and comparative necessity. As such, although statutes allow fee shifting, the concept of relational attorney's fees ensures that the American Rule isn't completely displaced.

## I.      BACKGROUND

Plaintiffs A.P., a minor, and her mother P.T., filed a complaint in this Court against Defendant Shamokin Area School District, for attorney's fees following a decision of a Commonwealth of Pennsylvania special education hearing officer in a special education due process hearing. That decision was rendered in Plaintiffs favor. Plaintiffs now move for attorney's fees pursuant to statutory fee shifting authority set forth in Individuals with Disabilities in Education Improvement Act of 2004, 20 U.S.C.A. §§ 1400 *et. seq.*, hereinafter "IDEIA" or "IDEA," and Title V of the Rehabilitation Act of  1973, 29 U.S.C. § 791, *et. seq.*, specifically Section 504, hereinafter "Section 504" or "the Rehabilitation Act."

The parties cross filed for summary judgment. For the reasons that follow, I find that Plaintiffs are entitled to attorney's fees as the 'prevailing party' at the state due process hearing. However, this Memorandum Opinion examines the extent of fees to be awarded to the prevailing party when the prevailing party succeeds on far fewer than all the claims brought. I have the authority to decide

this issue on a motion for summary judgment because "it is the role of the Court to review the hours billed and decide which are appropriately billed and which are excessive, redundant, or otherwise unnecessary."[2]

## II. DISCUSSION

### A. Motion for Summary Judgment Standard

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose."[3] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4] "Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[5]

"A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[6] "A plaintiff, on the other hand, must

---

[2] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602, (2001).

[3] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

[4] Fed. R. Civ. P. 56(a).

[5] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).

[6] *Clark*, 9 F.3d at 326.

point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[7]

"[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[8] Thus, "[i]f the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[9] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[10] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[11]

---

[7]  *Id.*

[8]  *Liberty Lobby, Inc.*, 477 U.S. at 252.

[9]  *Id.*

[10]  *Id.*

[11]  *Id. (quoting Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).

Summary judgment therefore is "where the rubber meets the road" for a plaintiff, as the evidentiary record at trial, by rule, will typically never surpass that which was compiled during the course of discovery. "In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party."[12]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[13] "[R]egardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[14]

Where the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

---

[12] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).

[13] *Celotex*, 477 U.S. at 323 (internal quotations omitted).

[14] *Id.*

resolved in favor of either party."[15]  For movants and nonmovants alike, the

assertion "that a fact cannot be or is genuinely disputed" must be supported by:

(i) "citing to particular parts of materials in the record" that go beyond "mere

allegations"; (ii) "showing that the materials cited do not establish the absence or

presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot

produce admissible evidence to support the fact."[16]

　　"When opposing summary judgment, the non-movant may not rest upon

mere allegations, but rather must 'identify those facts of record which would

contradict the facts identified by the movant.'"[17]  Moreover, "[i]f a party fails to

properly support an assertion of fact or fails to properly address another party's

assertion of fact as required by Rule 56(c), the court may . . . consider the fact

undisputed for purposes of the motion."[18]  On motion for summary judgment,

"[t]he court need consider only the cited materials, but it may consider other

materials in the record."[19]

---

[15]  *Liberty Lobby*, 477 U.S. at 250.

[16]  Fed. R. Civ. P. 56(c)(1).

[17]  *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).

[18]  Fed. R. Civ. P. 56(e)(2).

[19]  Fed. R. Civ. P. 56(c)(3).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[20]   "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[21]  "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[22]

"The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions."[23]  "When ruling on cross motions for summary judgment, the court must consider the motions independently,[24] and view the evidence on each motion in the light most favorable to the party opposing the motion.[25]

---

[20]   *Liberty Lobby*, 477 U.S. at 249.

[21]   *Id*.

[22]   *Id*. at 249–50 (internal citations omitted).

[23]   *Weissman v. United States Postal Serv*., 19 F. Supp. 2d 254, 259 (D.N.J. 1998) *citing Southeastern Transp. Auth. v. Pennsylvania Pub. Utility Comm'n*, 826 F.Supp. 1506, 1512 (E.D.Pa.1993), *aff'd*, 27 F.3d 558 (3d Cir.1994).

[24]   *Id. citing Williams v. Philadelphia Housing Authority,* 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd,* 27 F.3d 560 (3d Cir. 1994).

[25]   *See Matsushita Elec. Insur. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

## B. Attorney's Fees Standard Under the Statutes

As late Justice Antonin Scalia has explained, "under th[e] 'American Rule,' we follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'"[26] That statutory authority exists here.

### 1. Prevailing Party Status

Both the IDEIA and the Rehabilitation Act provide for fee shifting. Specifically, the IDEIA provides "in any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the prevailing party who is the parent of a child with a disability."[27] The provision in the Rehabilitation Act is similar, stating, "in any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."[28] Both are "worded similarly to corresponding clauses in civil rights statutes, such as [42 U.S.C.] § 1988…therefore, courts have held that the appropriate analysis in fee disputes under the IDEA [and the Rehabilitation Act] is that developed under § 1988."[29]

---

[26] *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 602, (2001) *citing Key Tronic Corp. v. U.S.*, 511 U.S. 809, 819, (1994).

[27] 20 U.S.C.A. § 1415(i)(3)(B)(i)(I); 34 C.F.R. § 300.517(a)(1)(i).

[28] 29 U.S.C.A. § 794a.

[29] *W.L.G. v. Houston Cty. Bd. of Educ.*, 975 F. Supp. 1317, 1322 (M.D. Ala. 1997)

However, "only the tribunal that hears the substantive claim [has the authority to] to award attorney's fees as part of the costs" under the Rehabilitation Act.[30] Accordingly, although the analysis of the three statutes may be used interchangeably, it is with the understanding that any award here is based only on the IDEIA, as this was not the tribunal that heard the Rehabilitation Act claim.

Under the IDEIA, "the Court is vested with discretion to award 'reasonable' attorney's fees to the parents of a disabled child who is the prevailing party."[31] Thus, the first question presented in the matter at hand is the extent to which Plaintiffs were the prevailing party.

To understand when one is the prevailing party, the Court must explore the intent of the IDEIA. "The IDEIA provides federal funds to help state and local education agencies meet their obligation to educate students with disabilities."[32] "To be eligible to receive these federal funds, states must comply with an extensive array of requirements."[33] "Chief among these is the state's obligation to enact a policy that ensures that every student with a disability will receive a free,

---

[30]  *Children's Ctr. for Developmental Enrichment v. Machle*, 612 F.3d 518, 522 (6th Cir. 2010).

[31]  174 A.L.R. Fed. 453.

[32]  37 Causes of Action 2d 447.

[33]  *Id.*

appropriate public education."[34]  The concept of a free, appropriate public education is so vital to the statute that practitioners have abbreviated this term to the acronym FAPE.

The United States Supreme "Court determined that when Congress enacted the IDEIA, it primarily sought to make public education available to disabled students, and that implicit in such a purpose was a requirement that the public education be sufficient to confer some educational benefit on the disabled student."[35]  "Nevertheless, the Court cautioned, Congress did not impose any greater substantive educational standard than is necessary to make access meaningful."[36]

The 'degree of success' standard articulated by the United States Supreme Court in *Hensley, supra*, governs attorney's fees awards in IDEIA cases.  "A 'prevailing party' must be successful in the sense that it has been awarded some relief by a court."[37]  "The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which

---

[34]  *Id.*

[35]  *Id.*

[36]  *Id.*

[37]  *A.W. v. E. Orange Bd. of Educ.*, 248 F. App'x 363, 364 (3d Cir. 2007) (internal citations omitted).

Congress sought to promote in the fee statute."[38] "Under the IDEA, a prevailing party is one that attains a remedy that both (1) alters the legal relationship between the school district and the handicapped child and (2) fosters the purposes of the IDEA."[39] "While a party does not need to prevail on every issue to become a prevailing party, she must prevail on some 'significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"[40]

The United States Supreme Court has explained "respect for ordinary language requires that a plaintiff receive at least some relief on the merits of his claim before he can be said to prevail."[41] "The plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant."[42] "Beyond this absolute limitation, a technical victory may be so insignificant… as to be insufficient to support prevailing party status."[43] "Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the

---

[38] *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 713 F.3d 268, 270 (5th Cir. 2013) (internal citations omitted).

[39] *Id.*

[40] *Id. citing Hensley* at 433.

[41] *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989) (internal citations omitted).

[42] *Id.*

[43] *Id.*

"generous formulation" we adopt today has not been satisfied."[44]  "The touchstone
of the prevailing party inquiry must be the material alteration of the legal
relationship of the parties in a manner which Congress sought to promote in the fee
statute."[45] "Where such a change has occurred, the degree of the plaintiff's overall
success goes to the reasonableness of the award under Hensley, not to the
availability of a fee award *vel non*."[46]

The particulars of the case at bar are, as follows.  On November 17, 2015,
Plaintiff, A.P.'s mother, P.T., filed a special education due process hearing
complaint with the Commonwealth of Pennsylvania Office for Dispute
Resolution.[47]  The complaint was a nine-count complaint asserting that the school
district failed to develop an evaluation report (Count I); failed to convene an
individualized education program team (Count II); failed to adequately develop the
October 9, 2013 individualized education plan (Count III); failed to adequately
develop the October 6, 2014 individualized education plan (Count IV); failed to
adequately develop the September 17, 2015 individualized education plan (Count
V); violated her right to a free, adequate public education in the least restrictive

---

[44] *Id.*

[45] *Id.* at 792-3.

[46] *Id.* at 793.

[47] ECF No. 13-2 at 1-18.

environment (Count VI); failed to provide a free, adequate public education, failed to implement an individualized educational plan, and/or failed to convene an individualized education plan team (Count VII); violated her due process rights for failure to provide expulsion rights (Count VIII); and denied a free, appropriate public education by a failure to provide manifestation determination rights (Count IX).

A.P. began in the school district in the autumn 2013 as a second grade student and continued there through the third grade. She left that school district after the third grade and is currently enrolled at a private school.[48] A.P. is autistic, and the parties agree that she is 'disabled' under the relevant statutes.[49] On October 12, 2011, A.P.'s prior school district issued a reevaluation report as required by the IDEIA.[50] Shamokin Area School District had not conducted another assessment or evaluation since that report from the prior school district.[51]

When A.P. began at Shamokin Area School District, the District implemented the individualized education plan ("IEP") from her prior school

---

[48]   ECF No. 13-1 at 7.

[49]   ECF No. 13-1 7.

[50]   ECF No. 13-1 at 8.

[51]   ECF No. 13-1 at 8.

district.[52] A.P.'s "behaviors were severe and inappropriate when first arriving at the school district."[53]  In her first full month at the Shamokin Area School District, this second grade student had a tantrum that broke her teacher's nose, gave that teacher a concussion, and broke the classroom aide's ankle.[54]  As a result, the school district reduced A.P.'s school day by an hour and fifteen minutes.[55]  This was not done to punish her, but rather was on the recommendation of the special education director from A.P.'s prior school district.[56]  On October 3, 2014, P.T. signed an agreement to waive reevaluation of A.P.[57]  Thirteen months later, P.T. filed for the special education due process hearing.

Plaintiff sought the following:

> an order for the payment of an independent educational evaluation, ("IEE"); an order for the payment of a speech and language IEE; an order for the payment of a sensory processing IEE; an order for payment of an assistive technology IEE; an order for payment of a functional behavior IEE; an order for the school district to develop adequate IEP goals and SDI to address all of the Student's areas of need; and attorney's fees and costs associated with this complaint and due process hearing. . .

---

[52]  ECF No. 13-1 at 9.

[53]  ECF No. 13-1 at 9.

[54]  ECF No. 13-1 at 9.

[55]  ECF No. 13-1 at 10.

[56]  ECF No. 13-1 at 19.

[57]  ECF No. 13-1 at 10.

The Parent also seeks compensatory education for the time period referenced throughout this complaint to until such time an adequate educational program is developed and implemented. Regarding the computation of a quantitative amount of compensatory education, the parent requests that the school district provide a copy of the bargaining agreement(s) with its teacher's union covering the last three (3) years. Plaintiffs also request that the school district include corresponding pay scales and any and all information pertaining to the value of employee benefits, including but not limited to life and health insurance costs…

Alternatively, the Parent also requests a qualitative amount of compensatory education to address the denial of FAPE. The Parent seeks a reasonable amount of compensatory education which would be provided until such time that the student would be in a position that the student should have been in had the school district provided FAPE in the least restrictive environment.

In order to implement this remedy, the Parent also seeks that the hearing officer appoint a qualified third party to develop, oversee and monitor the Student' s compensatory education services and goals. This program would be based upon the independent evaluations described above. The overseeing third party and compensatory education services would be provided at school district expense. The Parent requests that the compensatory education services and associated monitoring remain in place until the Student meets his compensatory education goals.[58]

After two days of testimony, the hearing officer found only that the

"violation proven by Petitioner in the instant case involves the school district's

failure to conduct a timely reevaluation and to fully assess the student."[59]

The hearing officer ultimately ordered the following relief:

---

[58] ECF No. 13-2 at 16-17.

[59] ECF No. 13-1 at 43.

1. The school district is ordered to conduct a functional behavioral analysis of the student within 30 days of the date of this decision;
2. The school district is ordered to conduct a nonverbal IQ test of the student within 30 days of the date of this decision;
3. The school district is ordered to conduct a full reevaluation of the student consistent with the instructions above within 60 days of the date of this decision;
4. The school district is ordered to reconvene the student's IEP team within 90 days of the date of this order to discuss whether any changes are needed to the student's educational program or behavioral intervention plan; and
5. All other relief requested in the instant due process complaint is hereby denied.

It is clear that Plaintiffs were the prevailing party at the state level, as the hearing officer awarded relief that 'materially altered' the legal relationship between the parties in a manner which Congress sought to promote in the statute. However, the extent of Plaintiffs' success is circumscribed.

"Where a party does not succeed on all of his claims, the court has discretion to reduce the attorney's fees award accordingly."[60] "Determining whether a plaintiff's losing claims warrant reduction is not a "mechanical" process, but requires that [the Court] properly consider the parties' achievements in a multi-claim context, considering, for example, hours spent on winning versus losing

---

[60] *Y.Z. ex rel. Arvizu v. Clark Cty. Sch. Dist.*, 54 F. Supp. 3d 1171, 1178–79 (D. Nev. 2014).

claims, the level of success achieved, and the degree of overlap between successful and unsuccessful claims."[61]

In holding that A.P.'s rights were violated, the hearing officer condensed the detailed complaint to five issues: 1) did the school district properly evaluate A.P; 2) was A.P. provided a FAPE; 3) Did the school district fail to educate A.P. in the least restrictive environment; 4) did the school district violate the law by reducing A.P.'s school day; and 5) did the school district violate the rules concerning discipline of students with disabilities?[62] The hearing officer found that A.P. was to be awarded relief limited to the first issue, finding merely that "Respondent failed to properly reevaluate the student and did not assess the student in all areas of suspected disability."[63] The hearing officer held that A.P. was provided a FAPE and educated in the least restrictive environment; and that the school district did not violate the law by reducing her school day; nor did it violate the discipline protections of the IDEIA.[64] It is true that Plaintiffs prevailed, but only on one of five issues. In sum, Plaintiffs were successful as to only twenty percent of their claim.

---

[61] *Id.*

[62] ECF No. 13-1 at 6.

[63] ECF No. 13-1 at 23.

[64] ECF No. 13-1 at 24-

Having determined that Plaintiffs were the 'prevailing party,' I next turn to the question of the 'reasonable' amount of fees to award.

## 2. The lodestar

Fee disputes hinge upon "the 'lodestar' formula," which requires multiplying the number of hours reasonably expended by a reasonable hourly rate."[65] In determining a reasonable fee, district courts in this Circuit have been instructed to apply "a burden-shifting type of procedure."[66] "A fee applicant bears the burden of documenting the applicable hourly rate."[67] A reasonable rate is "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity."[68] "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[69]

---

[65] *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 177 (3d Cir. 2001) (Rosenn, J.) (*citing Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

[66] *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012) (Fisher, J.).

[67] *Evans v. Port Auth. of N.Y. & New Jersey*, 273 F.3d 346, 361 (3d Cir. 2001).

[68] *Student Pub. Interest Research Grp. of New Jersey, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988) (Becker, J.).

[69] *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).

Next, a court considers the number of hours reasonably expended on the litigation. Similar to its review of the reasonable rate, the court may exclude hours that were "excessive, redundant, or otherwise unnecessary."[70] Further, the court can reduce the hours claimed by the number of hours "spent litigating claims on which the party did not succeed and that were 'distinct in all respects from' claims on which the party did succeed."[71] "[I]t is appropriate for the Court to treat the fees in the manner in which the clients would be treated if the clients were paying the fees directly."[72]

"That the plaintiff is a 'prevailing party' therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved."[73] Thus, "[f]ollowing an objection to a fee request, district courts have discretion to adjust the hours and rates and to increase or decrease the lodestar based on other considerations raised by the respondent."[74] The court "may

---

[70] *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

[71] *Id.*

[72] *Smith v. Borough of Dunmore*, 2008 WL 4542246, at *4 (M.D. Pa. Oct. 9, 2008) (Caputo, J.), *aff'd*, 633 F.3d 176 (3d Cir. 2011) (Jordan, J.).

[73] *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

[74] *Dee v. Borough of Dunmore*, 548 F. App'x 58, 60 (3d Cir. 2013) (Hardiman, J.).

attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."[75]

"A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole."[76] "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"[77] "We have already observed that if 'a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.'"[78]

"Work on an unsuccessful claim cannot be compensated because it was not expended in pursuit of the ultimate result achieved."[79] "If []a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."[80]

---

[75] *Hensley*, 461 U.S. at 436–37.

[76] *Id*. at 440.

[77] *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*quoting Hensl*ey, 461 U.S. at 436).

[78] *Farrar*, 506 U.S. at 114 (*quoting Hensley*, 461 U.S. at 436).

[79] *Hensley*, 461 U.S. at 435 (internal citation omitted).

[80] *Id.*

"This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith."[81]

### C. Plaintiffs will be awarded $3,338.80 for attorney's fees and $681.00 for costs

In *Beattie v. Line Mountain School District*, a civil rights action, I set the standard forum rates for attorneys in the Williamsport division of this Court to range from $150 to $325 per hour, depending on the attorney's experience, the complexity of the litigation, and the quality of the submitted work product.[82]  I have repeatedly affirmed this holding over the ensuing three years.[83]  "A reasonable fee is one which is adequate to attract competent counsel, but which does not produce windfalls to attorneys."[84]

Turning , then, specifically to the IDEIA, I note that "under § 1415(i)(3)(C), fees are to be based on rates prevailing in the community for the kind and quality of services furnished."[85]

---

[81] *Id.*

[82] 2014 WL 3400975, at *10 (M.D. Pa. July 10, 2014).

[83] *See Nittany Outdoor Advert., LLC v. Coll. Twp.,* 2015 WL 1537616, at *1 (M.D. Pa. 2015); *Joe Hand Promotions, Inc. v. Tickle,* 2016 WL 393797, at *1 (M.D. Pa. 2016); *Keister v. PPL Corp.,* 2016 WL 688031 (M.D. Pa. 2016), aff'd, 677 F. App'x 63 (3d Cir. 2017).

[84] *Pub. Interest Research Grp. of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) (internal citation omitted).

[85] 174 A.L.R. Fed. 453.

Under § 1415(i)(3)(F), the court is generally instructed to reduce the amount of attorney's fees awarded whenever the court finds the following: (1) the parent unreasonably protracted the final resolution of the controversy; (2) the amount of the attorney's fees otherwise awardable unreasonably exceeds the hourly rate prevailing in the community for similar services; (3) the time spent and legal services furnished were excessive ; or (4) the parent's attorney did not provide to the school district the appropriate information in the due process complaint in accordance with § 1415(b)(7).  Under § 1415(i)(3)(G), however, such a fee reduction is not required if the court finds that the state or local educational agency unreasonably protracted the final resolution of the action or proceeding or that there was a violation of § 1415.[86]

In their motion for summary judgment, Plaintiffs' initially requested an award of $28,268.00.[87]  This amount is comprised of $281.00 for two night's lodging expense, and 98.2 hours of work at a rate, that he "voluntarily" reduced from $400.00 per hour to $285.00.[88]  In Plaintiffs' reply brief, they increase the amount requested by $200.00, to $28,468.00 to represent a decrease in the estimated hour expended in drafting the reply brief but to also add $400.00, representing the cost of the filing fee to file the complaint.

Plaintiffs' counsel justifies his rate by explaining that he "has exclusively practiced special education law from 2000 to present, totaling over sixteen (16)

---

[86] *Id.*

[87] ECF No. 14 at 1.

[88] ECF No. 17 at 14.

years' experience at the time of filing."[89] Plaintiffs' counsel has a Master's Degree in Public Administration from Widener University and a Juris Doctorate from American University.  He began his practice of law as a special education defense lawyer defending school districts.[90]  After three years of defense work, he opened a private practice in 2004 and has only represented special needs students in special education matters since that time.[91]

By comparison, Defense counsel, with twenty-eight years of experience in this area of the law billed the District at a rate of $170.00 per hour.[92]  The District recommends that the rate awarded to Plaintiffs' counsel be reduced to the same rate of that of Defense counsel, which is the rate the Shamokin region can afford. That suggestion is thoroughly reasonable and persuasive and I will adopt it. Plaintiffs' counsel will therefore be awarded fees at a rate of $170 per hour.

Courts have routinely reduced the lodestar by a percentage to reflect the degree of success obtained pursuant to *Hensley*.[93]  Because Plaintiffs succeeded on only 20% of their claims, I reduce the hours expended by 80%.

---

[89]   ECF No. 15 at 5.

[90]   *Id.*

[91]   *Id.*

[92]   ECF No. 19 at 18.

[93]   *See e.g. Kerry B. v. Union 53 Public Schools,* 882 F. Supp. 184, 10 A.D.D. 367 (D. Mass. 1995) (reducing the award to 10% of that requested); *N.S. ex rel. P.S. v. Stratford Bd. of Educ.,* 97 F. Supp. 2d 224, 144 Ed. Law Rep. 897 (D. Conn. 2000) (reducing the award by

Accordingly, Plaintiffs are awarded costs of $281.00 for two nights lodging and $400 for the filing fee in this Court. Plaintiffs' hours are reduced by 80% from 98.2 to 19.64. Plaintiffs' hourly rate is reduced to $170.00. The attorney's fees awarded, then, is $3,338.80.

## III. CONCLUSION

In his 2015 year end remarks, Chief Justice John G. Roberts, Jr. explained the amended discovery rule, that of the "common-sense concept of proportionality" as a "careful and realistic assessment of actual need." The same concept applies here when awarding relational attorney's fees. I have engaged in a careful and realistic assessment of the value of litigation that resulted in limited success. To award Plaintiff counsel fees in the amount of the annual average salary for taxpayers in the Shamokin area, for obtaining an award of a right already proscribed by statute, just slightly sooner than the statute requires, is disproportionate to the result achieved.

---

15%); *Phelan v. Bell*, 8 F.3d 369, 3 A.D.D. 518, 87 Ed. Law Rep. 46 (6th Cir. 1993) (eliminating fees requested from an unsuccessful first complaint); *Zayas v. Puerto Rico*, 451 F. Supp. 2d 310 (D.P.R. 2006) (reducing the award by 10% for time spent on unsuccessful claims); *A.S. ex rel. V.S. v. Colts Neck Bd. of Educ.*, 190 Fed. Appx. 140 (3d Cir. 2006) (affirming District Court award of only 20% of fees requested).

Consequently, Plaintiffs' motion for summary judgment is granted, Defendant's denied, but only to the extent specified in this Memorandum Opinion. As the prevailing party, Plaintiffs' counsel is awarded **$3,338.80** in attorney's fees, together with $681.00 in costs, the appropriate amount in relation to the results achieved.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge